

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

| | | |
|---|---|---|
| Rod J. Rosenstein<br>United States Attorney<br><br>Ayn B. Ducao<br>Assistant United States Attorney | 36 South Charles Street<br>Fourth Floor<br>Baltimore, Maryland 21201 | DIRECT: 410-209-4819<br>MAIN: 410-209-4800<br>FAX: 410-962-0717<br>TTY/TDD: 410-962-4462<br>Ayn.Ducao@usdoj.gov |

August 30, 2012

David R. Solomon, Esquire
Glaser and Solomon, LLC
201 N. Charles Street, Suite 1717
Baltimore, MD 21201

Re:   United States v. Walter Lee Powell
      Criminal NO. CCB-11-569

Dear Mr. Solomon:

This letter, together with the Sealed Supplement confirms the plea agreement which has been offered to your client, Walter Lee Powell (Defendant) by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by September 6, 2012, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.   The Defendant agrees to plead guilty to to Count One of the Superseding Indictment, which charges him with conspiracy to possess with the intent to distribute one kilogram or more of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 846. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.   The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

a. At or about the time charged in the Indictment, in the District of Maryland, the Defendant knowingly, intentionally and willfully agreed with one or more persons to distribute, or possess with the intent to distribute, 1 kilogram or more of heroin;

b. The participation by the Defendant was knowing and voluntary, that is not by accident or mistake.

## Penalties

3. The maximum sentence provided by statute for the offense to which your client is pleading guilty is as follows: imprisonment for life with a minimum mandatory sentence of ten (10) years, and a $10,000,000 fine, followed by a term of supervised release of five (5) years. In addition, your client must pay $100 as a special assessment under 18 U.S.C. §3013, which will be due and should be paid at or before time of sentencing. Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2500.00 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3). If a fine is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be comprised of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

2

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

<u>Advisory Sentencing Guidelines Apply</u>

    5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

    6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

### Base Offense Level and Adjustments

(a).    This Office and the Defendant stipulate and agree that the applicable base offense level is a level 32, pursuant to USSG §§2D1.1(c)(4), and 1B1.3 to account for at least 1 kilogram of heroin, but less than 3 kilograms of heroin.

This Office and the Defendant also stipulate and agree that there is a two-level upward adjustment pursuant to USSG §3B1.1(c) because the Defendant was an organizer, leader, manager or supervisor in the criminal activity.

(b).    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for his conduct. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about his involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (vii) attempts to withdraw his plea of guilty.

(c).    Therefore, this Office and the Defendant stipulate and agree that the adjusted base offense level is a level **31.**

7.    The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.    The Defendant is free to argue for any offense characteristics, sentencing guidelines factors, departures and/or adjustments set forth in Chapters 2, 3 or 4 of the United States Sentencing Guidelines, as well as a variance under 18 U.S.C. §3553, upon giving the Government notice at least two weeks prior to the date of sentencing. The Government reserves the right to oppose any request(s) made by the Defendant.

### Waiver of § 851 Enhancement Notice

9.    In exchange for the Defendant's plea of guilty to Count One of the Superseding Indictment pursuant to this plea agreement, this Office agrees not to file a notice of the Defendant's prior felony drug convictions pursuant to 21 U.S.C. § 851. Accordingly, this Office will not rely on the Defendant's prior felony drug convictions to enhance the mandatory minimum sentence to which the Defendant is subject. Nothing in this paragraph, however, shall be construed

to prevent the Court from relying on the Defendant's prior convictions to calculate the Defendant's criminal history under the sentencing guidelines or in determining whether he is a career offender or an armed career criminal.

## Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a) The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b) The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds **the high end of range for offense level 31 and the defendant's applicable criminal history category**; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below **the low end of range for offense level 31 and the defendant's applicable criminal history category**.

   c) Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

   d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

11. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under USSG § 3C1.1, or (ii) fails to accept personal responsibility

for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

12.   The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the Presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

13.   This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and together with the Stipulation of Facts and the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to us promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: *[signature]*
Ayn B. Ducao
Christopher J. Romano
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorneys, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10-13-12                              *[signature]*
Date                                  Walter Lee Powell

I am Mr. Powell's attorney. I have carefully reviewed every part of this agreement and sealed supplement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

9/13/12                               *[signature]*
Date                                  David R. Solomon, Esquire

7

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

As part of a long term investigation being conducted by the Federal Bureau of Investigation (FBI) into a heroin drug trafficking organization, the FBI applied for and received authorization to intercept phone calls placed to and from a number of cellular telephones, including phones utilized by Walter Lee Powell (Defendant) and Danilo Garcia (Garcia). Calls were intercepted over the Defendant's and Garcia's phones which revealed that Garcia supplied kilogram quantities of heroin to the Defendant. The Defendant would then resell that heroin to his own customers.

For example, on July 22, 2011, Garcia received a call from the Defendant. Garcia stated, "I got that girl for 109 when you and me meet tonight . . . I'm here now in Philadelphia, I wanted see you come in to here . . . the girl with me, the girl she wanted hanging out with you, she with me." The Defendant later replied, "Let me see what I can do, let me see what I can do. Alright?"

Later in the day on July 22, 2011, the Defendant received a call from Diego Amparo (Amparo). During the call the Defendant asked, "...you supposed to give me the information, how to get there?" Amparo responded, "You take Aramingo...95 north to Philly...Aramingo Avenue, then you make a left on Lehigh Ave...and then you pass 2nd Street to Cousins Supermarket."

Subsequent to the above call on July 22, 2011, agents set up physical surveillance at the intersection of American Street and Lehigh Avenue, in Philadelphia, near 2954 N Orianna Street. Agents witnessed the Defendant driving towards 2954 N Orianna Street and then leave the neighborhood at approximately 12:37 am. On July 23, 2011 at approximately 1:42 am, the

Defendant was stopped in a traffic stop at I-95 in Maryland and was found to be in possession of approximately 144 grams of heroin. Based on their training, knowledge, and experience the FBI agents believe that Powell had arranged to pick up heroin from Amparo in Philadelphia, which had been brokered by Garcia.

On July 29, 2011, during activation #5726 (TT1), the Defendant placed a call to Eric Coley (Coley). The Defendant asked, "Hey, did you call me?" Coley replied, "I really need a five dollar." Based on their training, knowledge, and experience the FBI agents believe that Coley was asking to purchase five grams of heroin from the Defendant.

On August 15, 2011, FBI agents set up physical surveillance in the vicinity of the Baltimore Travel Plaza. At approximately 6:49 pm, Nancy Feliciano (Feliciano) exited a van in the McDonald's parking lot. Feliciano walked towards a waiting cab and got into the back seat at which time he was approached by FBI agents. During the search of the Feliciano's belongings, the agents recovered a small plastic bag of what appeared to contain a large bag of rice. Inside of the bag of rice was a separate bag of what appeared to be a large quantity of heroin. A lab test confirmed that the substance was in fact heroin weighing approximately 497.8 grams. Feliciano admitted that she was transporting heroin for a Dominican in the Bronx by the name "DANNY", a reference to Garcia. Feliciano also stated that "DANNY" provided a telephone number and an address in Baltimore for the person that was purchasing the heroin and she wrote the name and number down on an index card which was found on her person. The card read, "Baltimore Travel Plaza, 1906 Chelsea Rd, Baltimore, Md, 443-869-9400," which is the residence and phone number of the Defendant. Therefore, the FBI agents believe that Feliciano was on her way to the Defendant in order to deliver heroin to the Defendant on Garcia's behalf.

9

The parties stipulate that the amount of heroin that the Defendant conspired with other co-conspirators, including Garcia, to distribute amounted to more than one kilogram but less than three kilograms.

SO STIPULATED:

*Ayn B. Ducao*
Ayn B. Ducao
Christopher J. Romano
Assistant United States Attorneys

*Walter Lee Powell*
Walter Lee Powell

*David R. Solomon*
David R. Solomon, Esquire
Counsel for Defendant