**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| v. | * |
| | * |
| **DANILO GARCIA,** | *   Criminal Number: CCB-11-0569 |
| | * |
| **ROY LEE CLAY,** | * |
| | * |
| **DENNIS MARCO ELLISON,** | * |
| | * |
| **Defendants** | * |
| | * |

..ooOOOoo..

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION IN LIMINE TO EXCLUDE TESTIMONY DUE TO**
**GOVERNMENT FAILURE TO COMLY WITH DISCOVERY OBLIGATIONS**

The United States of America, by its undersigned counsel, hereby submits its response in opposition to the pretrial motion in limine filed by Defendant Roy Lee Clay to preclude the expert testimony of Special Agent Douglas Ellington of the Drug Enforcement Administration (DEA) and Special Agent Carrie Dayton of the Federal Bureau of Investigation. In his motion, Defendant Clay indicates that Defendants Danilo Garcia and Dennis Marco Ellison join in the motion. For the reasons discussed below, the Defendant's motion should be denied.

**BACKGROUND**

*A.   Indictment*

The Defendants and their co-defendants were charged in a six-count indictment returned by the grand jury on October 19, 2011. Count one charged a total of fifteen defendants, including Danilo Garcia (Garcia), Walter Lee Powell (Powell), Roy Lee Clay (Clay), Jan Carlos Veras-Rosario (Rosario), Jasmine Veras-Rosario (Jasmine Rosario), Victor Garo-Zalazar (Zalazar), Eric

Coley (Coley), Sean Diggs (Diggs), Walter Lee Powell, Jr. (Powell, Jr.), Donald Justin Smith (Smith), Darling Martinez (Martinez), Nancy Feliciano (Feliciano), Diego Amparo (Amparo), Dennis Ellison (Ellison), and Kenya Salik Montgomery (Montgomery), with conspiracy to possess with the intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Counts two and three charged Powell with possession with the intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin, a Schedule I substance, in violation of 21 U.S.C. § 841(a)(1). Count four charged Garcia, Powell, and Montgomery with possession with the intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I substance, in violation of 21 U.S.C. § 841(a)(1). Count five charged defendants Garcia, Powell and Amparo with possession with the intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin, a Schedule I substance, in violation of 21 U.S.C. § 841(a)(1). Count six charged Garcia, Powell and Amparo with possession with the intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin, a Schedule I substance, in violation of 21 U.S.C. § 841(a)(1).

    *B.*    *Superseding Indictment*

On August 23, 2012, a federal grand jury returned a ten-count superseding indictment in the above-captioned matter.[1] Count one charged that from in or about April 2009, and continuing through in or about November 2011, in the District of Maryland and elsewhere the defendants conspired to distribute and possess with intent to distribute 1 kilogram or more of a quantity of a

---

[1] Montgomery was not charged in the superseding indictment since she pled guilty to count one of the indictment on April 9, 2012 and was sentenced to 120 months imprisonment on June 12, 2012.

mixture or substance containing a detectable amount of heroin, a Schedule I narcotic controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 846.  Counts two through six remained the same.

Count seven charged that on April 17, 2009, Garcia did intentionally and unlawfully attempt to possess with intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of  21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Count eight charged that on November 8, 2011, Coley did intentionally and unlawfully attempt to possess with intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance,  in violation of  21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Count nine charged that on November 8, 2011, having previously been convicted of a crime of imprisonment for a term exceeding one year, Coley did knowingly and unlawfully possess two firearms in and affecting commerce, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 2.  Count ten charged that on November 8, 2011, Coley did knowingly and intentionally possess two firearms in furtherance of drug trafficking crimes.   The firearms charged in Counts nine and ten were recovered during a search of Coley's residence at 3402 Dudley Avenue, Baltimore, Maryland, pursuant to a search warrant authorized by Chief Magistrate Judge Paul W. Grimm, District of Maryland.

  *C.* *Expert disclosures*

On August 30, 2012, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the undersigned sent a letter to counsel for all defendants who had not yet pled guilty, attached hereto as Exhibit A.  This letter was sent via electronic mail and regular U.S. mail. Regarding Special Agent Ellington's testimony, the letter states as follows: "Special Agent Ellington will testify as an

3

expert in drug trafficking, including packaging, purities, prices and distribution of controlled substances, as well ast he use of nominees in drug conspiracies.  He will also opine as to the use of firearms for both offensive and defensive purposes in narcotics trafficking. "  Also attached to this letter was the *curricumlum vitae* of Special Agent Ellington, which is attached hereto as Exhibit B. Regarding Special Agent Dayton's testimony, the letter states as follows: "Special Agent Dayton served as a monitor on the wiretaps, and will testify as to the meaning of coded references in several of the calls used by the conspirators, when discussing drug trafficking over the phone."  Special Agent Dayton's *curricumlum vitae* was also attached to the letter and is attached hereto as Exhibit C.

None of the defendant asked for further disclosures or clarification regarding either Special Agent Ellington's or Special Agent Dayton's testimony.  Instead, Defendant Clay simply filed a motion to preclude Special Agent Ellington's and Special Agent Dayton's testimony on September 28, 2012 - the Friday before trial is set to commence on Monday, October 1, 2012.

## ARGUMENT

**I.     BECAUSE THE GOVERNMENT'S EXPERT DISCLOSURES WERE BOTH TIMELY AND SUFFICIENT, THE GOVERNMENT FULLY COMPLIED WITH FEDERAL RULE OF CRIMINAL PROCEDURE 16(a)(1)(g).**

Defendant Clay moves to exclude the testimony of Special Agent Ellington and Special Agent Dayton and alleges that the Government failed to comply with Federal Rule of Criminal Procedure 16(a)(1)(G).  Clay's argument must fail.

**A.     THE SUBSTANCE OF THE GOVERNMENT'S EXPERT DISCLOSURES COMPLIED WITH RULE 16.**

Federal Rule of Criminal Procedure 16(a)(1)(G) governs the Government's discovery obligations with respect to expert witnesses and states as follows:

4

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. If the government requests discovery under subdivision (b)(1)(C)(ii) and the defendant complies, the government must, at the defendant's request, give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial on the issue of the defendant's mental condition. The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G).

Upon request, the Government must disclose to the defendant a written summary of expert testimony, describing the witness's opinions, the bases and the reasons for those opinions, and his qualifications. *See United States v. Crass*, 50 F.3d 81, 83 (1st Cir. 1995); *United States v. Navarro*, 90 F.3d 1245, 1259 (7th Cir. 1996). Absent a request, Rule 16 imposes no disclosure obligation on the Government. *See United States v. Salerno*, 108 F.3d 730, 743 (7th Cir. 1997). *See, e.g., United States v. Lipscomb*, 539 F.3d 32, 38 (1st Cir. 2008) (disclosure sufficient where defense informed that officers would be testifying based on their training and experience, and would draw conclusions regarding presence of firearms and connection between quantity of crack cocaine seized and drug distribution; noting that, "[h]ad the testimony involved a more complex subject matter, as found in cases involving technical or scientific evidence, more detailed notice may have been required"), *cert. denied*, 129 S.Ct. 963 (2009);*United States v. Jackson*, 51 F.3d 646, 650-51 (7th Cir. 1995) (disclosure of summaries stating officers would provide expert testimony, based on their training and experience, about particular items commonly used by drug trafficking organizations was sufficient.

It is well established that qualified law enforcement officers can testify as expert witnesses on translations of code words used by drug traffickers. *See, United States v. Johnson,* 54 F.3d 1150, 1161-62 (4th Cir. 1995); (testimony about drug slang admissible under Rule 702); *United States v. Wilson*, 484 F.3d 267, 274-78 (4th Cir. 2007) (Rule 702 and courts of appeal have routinely held that law enforcement officers with extensive drug experience are qualified to give expert testimony on the meaning of drug-related code words); *United States v. Johnson*, 587 F.3d 625, 633-636 (2009) ( approving expert testimony that use of "seemingly innocuous terms" in intercepted telephone calls, including "tickets" and "t-shirts" were actually code words for drugs). *See also, United States v. Gibbs,* 190 F.3d 188, 211 (3rd Cir. 1999) ("[I]t is well established that experienced government agents may testify to the meaning of coded drug language under Fed. R. Evid. 702."); *United States v. Griffith*, 118 F.3d 318, 321-22 (5th Cir. 1997) (holding that experienced narcotics officers may offer expert testimony with respect to "drug traffickers' jargon");*United States v. Delpit,* 94 F.3d 1134, 1145 (8th Cir. 1996) (holding that an experienced officer was qualified to give expert testimony concerning the "meaning of jargon and code words" because his experience represented "the best education there is for this type of thing"); *United States v. Garcia*, 291 F.3d 127, 139 (2d Cir. 2002) ("Given the attempts of drug dealers to disguise the content of their discussions as legitimate subject matters, courts may allow witnesses to 'decipher' the codes drug dealers use and testify to the true meaning of the conversations.").

The substance of Government's disclosure of expert testimony was sufficient under Federal Rule of Criminal Procedure 16. On August 30, 2012, Government counsel informed the Defendant that Special Agent Dayton would testify about the use of code words by drug

traffickers when conversing over the phone and that Special Agent Ellington would testify regarding about narcotics trafficking, including pricing and distribution. See Exhibit A. Moreover, the Government provided Special Agent Ellington's resume which details Special Agent Ellington's extensive prior experience which includes being qualified as an expert witness in United States District Court, District of Maryland in 38 instances regarding narcotics trafficking and the role of firearms/violence in narcotics trafficking. The Government also provided Special Agent Dayton's resume which includes her experience in over twenty investigations regarding violation of controlled substances laws and five wiretap investigations.

Nevertheless, Clay claims that this disclosure is inadequate because the Government's disclosure did not include "outlines of the proposed testimony of the experts." Def. Motion at 2. Clay also claims that he should be given copies of Special Agent Ellington's prior testimony and Clay's counsel states that he has received copies of Special Agent Ellington's prior testimony in other cases. *Id.* at 3.[2] However, the Government has clearly given adequate notice outlining the testimony of both Special Agent Dayton and Special Agent Ellington. Special Agent Dayton will testify regarded the coded language used by the participants in the intercepted calls. Special Agent Ellington will testify regarding narcotics trafficking organizations, including pricing and distribution of narcotics.

---

[2] Indeed, Government counsel is advised that Clay's counsel received copies of Special Agent Ellington's prior testimony in other cases from another Assistant United States Attorney in another unrelated case in November 2011. Moreover, neither Clay's counsel nor any other defense counsel asked Government counsel for copies of Special Agent Ellington's prior testimony. If asked, Government counsel likely would have complied. However, instead of attempting to resolve this issue prior to litigation, Clay's counsel simply filed this motion. Special Agent Dayton has not previously testified regarding the use of coded language by narcotics traffickers so there simply is no prior testimony of Special Agent Dayton's to provide even if a request had been made.

Moreover, defense counsel have been provided with all of the calls intercepted over the wiretaps. In addition, counsel for the seven defendants currently scheduled for trial - including Clay, Garcia, and Ellison – have been provided transcripts of those calls that the Government intends to introduce at trial. Clay, Ellison, and Garcia are therefore well aware which calls will be the subject of Special Agent Dayton's testimony.

### B.   THE GOVERNMENT'S EXPERT DISCLOSURES WERE TIMELY.

Federal Rule of Criminal Procedure 16's advisory committee's note to 1993 Amendments provides guidance with respect to timing of the disclosures. It states, "[a]lthough no specific timing requirements are included [for expert disclosures], it is expected that the parties will make their requests and disclosures in a timely fashion." Whether a disclosure is timely is a matter within the trial judge's discretion, is often fact-specific. See *United States v. Beltran-Arce*, 415 F.3d 949, 953 (8th Cir. 2005) (disclosure required within twenty-four hours of defendant's Rule 16 discovery request); *United States v. Balogun*, 971 F.Supp. 1215, 1235 (N.D. Ill. 1997) (government permitted to provide disclosure three weeks before trial); *United States v. Finn*, 919 F.Supp. 1305, 1316 n.7 (D. Minn. 1995) (disclosures to be made as information becomes available, and no later than seven days before trial).

The Government has met its Rule 16 obligations and the Government's expert disclosures were timely under the Federal Rules of Criminal Procedure. The Government gave the Defendants more than one month's notice of its intent to use expert testimony in its case-in-chief. Therefore, the Defendants had ample time to locate expert witnesses to testify on their behalf.

## **CONCLUSION**

The Government respectfully submits that for the reasons stated above, Defendant Clay's Motion in Limine should be denied.

>Respectfully submitted,
>
>ROD J. ROSENSTEIN
>United States Attorney
>
>
>By:_____/s/_____
>     Ayn B. Ducao
>     Christopher J. Romano
>     Assistant United States Attorneys
>     36 S. Charles St., 4th Fl.
>     Baltimore, Maryland 21201
>     (410) 209-4800

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of September, 2012, a copy of the foregoing Government's Opposition to Defendant's Motion to Exclude Testimony Due to Government Failure to Comply with Discovery Obligations was electronically filed with notice to their counsel of record.

/s/
Ayn B. Ducao
Assistant United States Attorney